William A. BROWN, Plaintiff,

v.

Beverly STEWART, Individually and as City of Pittsburgh Police Officer; Paul Holeczy, Robert Cocco, and Stan Holland, Individually and as Deputy United States Marshals; Charles Kozakiewicz, Individually and as Warden of Allegheny County Jail; Joe Gricar, Individually and as Correctional Officer of Allegheny County Jail, Defendants.

Irene S. KUZAK, Plaintiff,

v.

Beverly STEWART, Individually and as City of Pittsburgh Police Officer; Paul Holeczy, Robert Cocco, and Stan Holland, Individually and as Deputy United States Marshals, Defendants.

Civ. A. No. 95–863.

United States District Court, W.D. Pennsylvania.

Jan. 12, 1996.

Lloyd F. Engle, Jr., James C. Kuhn, II, Kuhn, Engle & Stein, Pittsburgh, PA, for Plaintiffs.

Bryan Campbell, Shelley Bould Campbell, Pittsburgh, PA, for Defendant Stewart.

Jessica Lieber Smolar, Kevin F. O'Hare, U.S. Attorney's Office, Pittsburgh, PA, for Defendants Holeczy, Cocco and Holland.

Eric N. Anderson, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, PA, for Defendants Kozakiewicz and Gricar.

## MEMORANDUM OPINION

CINDRICH, District Judge.

This is a civil rights action based on mistaken identity that led to plaintiffs' arrest and to one plaintiff's extended detention. William A. Brown and Irene S. Kuzak were arrested on May 6, 1993 by defendants Beverly Stewart ("Stewart"), a City of Pittsburgh Police Officer; and Paul Holeczy, Robert Cocco, and Stanley Holland, Deputy Marshals of the United States Marshals Service ("Federal Defendants") (also referred to collectively as "the arresting defendants"). Brown was detained in the Allegheny County Jail almost two months and allegedly assaulted there, for which he seeks to hold Charles Kozakiewicz, Warden of the Allegheny County Jail and Joe Gricar, Correctional Officer of Allegheny County Jail ("County Defendants"), responsible. Plaintiffs assert that these defendants deprived them of rights under the Fourth and Fifth Amendments of the United States Constitution and the Declaration of Rights, Article I, §§ 8 and 11, of the Constitution of the Commonwealth of Pennsylvania, for which 42 U.S.C. §§ 1983, 1985, and 1988 provide a remedy. All defendants are sued in their personal and official capacities.

Before the Court are Stewart's motion to dismiss or for summary judgment, Federal Defendants' motion to dismiss or for summary judgment, and County Defendants' motion to dismiss. For the reasons stated below we deny in part and grant in part the Federal Defendants' motions, and deny Stewart's and the County Defendants' motions.

### FACTS

On May 6, 1993, at approximately 10:30 a.m., Stewart and Federal Defendants appeared at the apartment shared by the plaintiffs and their two-and-a-half year old child at 139 Charles Street in the City of Pittsburgh. Their purpose was to serve an arrest warrant for a William "Billy" Brown,[1] a black male, with a birth date of January 8, 1949. Compl. ¶ 5. Billy Brown was wanted for stabbing two people and threatening to kill one of them in September 1992. Kuzak, William Brown's common-law wife, answered the door. When the arresting defendants informed her of their purpose, she claimed that she did not know Billy Brown, because her husband had never been known as Billy Brown. Id. ¶ 6. Stewart and Federal Defendants entered the apartment and found Brown in the bedroom. Brown alleges that Stewart and Federal Defendants pushed him to the floor and handcuffed him. Id. ¶ 7. The arresting defendants showed Brown a photograph of a bearded black man and claimed that Brown was the man in the photograph. Id. ¶ 8. Brown protested that he was not the man in the photograph. Id. Kuzak was also arrested and charged with hindering arrest. Id. ¶ 10.

Stewart and Federal Defendants maintained that they had arrested the correct man despite Brown's protestations to the contrary. Compl. ¶ 12. The Allegheny County Bail Agency also told the officers that they had arrested the wrong man, but Stewart and Federal Defendants did not investigate these contentions. Id. ¶¶ 13, 14. Stewart and Federal Defendants did not check Brown's fingerprints against those of the Billy Brown sought in the arrest warrant. Id. ¶ 15.

---

1. As will be fully explained, plaintiff William Brown shares a name with a fugitive. To minimize confusion, we will refer to plaintiff as William Brown and to the fugitive as Billy Brown.

Brown was held in the Allegheny County Jail and Jail Annex from May 7, 1993 to June 30, 1993—53 days. *Id.* ¶¶ 16, 17. On or about June 30, 1993, Brown appeared for identification by the alleged victim of the crimes perpetrated by Billy Brown. *Id.* ¶ 17. The victim immediately stated that William Brown was not the person who had attacked her. The presiding judge promptly issued a new warrant for the arrest of Billy Brown, adding a direction to avoid the re-arrest of William Brown. *Id.*

Brown also alleges that while being transported from the Allegheny County Jail to the Allegheny County Jail Annex on May 10, 1993, he was assaulted by defendant Gricar, a corrections officer. Compl. ¶¶ 18, 19, 20, 21. Brown reported the incident to Warden Charles Kozakiewicz on or about May 12, 1993. *Id.* ¶ 22.

Brown contends that he was seized under a defective warrant and that no probable cause existed to execute the arrest warrant against him. Compl. ¶¶ 25, 26. He claims that Stewart and Federal Defendants knew or should have known that they were executing a warrant against the wrong person and that each Defendant violated clearly established constitutional or statutory rights of which a reasonable officer would or should have known. *Id.* ¶ 27. Brown asserts that he was deprived of the rights to be free from physical abuse, coercion and intimidation; to be released on his own recognizance or reasonable bail; and to be free from false arrest and imprisonment. *Id.* His claims are expressed in three counts. Count One is for deprivation of unspecified constitutional rights. Count Two is for violation of rights protected by 42 U.S.C. § 1983. Count Three is for conspiracy to violate civil rights under 42 U.S.C. § 1985. He pleads a Count Four, but this is for attorneys' fees under 42 U.S.C. § 1988 and does not constitute a separate cause of action.

Plaintiff Kuzak originally made claims under the same causes of action by separate complaint. Her claims are based on her arrest, which she claims was done without probable cause, for hindering her husband's arrest. The court consolidated her action with her husband's on August 11, 1994, and considers them together below.

### STANDARD OF REVIEW

Stewart and the Federal Defendants have filed motions to dismiss, or in the alternative, for summary judgment, and have submitted declarations, an affidavit, and evidentiary material. Plaintiffs have responded in kind. The court therefore considers itself at liberty to apply summary judgment standards to these motions.

Summary judgment is mandated where the pleadings and evidence on file show there is no genuine dispute of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A genuine issue does not arise unless the evidence, viewed in the light most favorable to the non-moving party, would allow a reasonable jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A fact is material when it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. at 2510. In reviewing any facts alleged to create a genuine issue, if the Court concludes that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment must be granted. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). We may not weigh evidence or determine credibility on summary judgment, however, since the process does not lend itself to this type of determination. *Country Floors, Inc. v. Gepner and Ford,* 930 F.2d 1056, 1061–62 (3d Cir.1991).

The County Defendants have moved only to dismiss. In deciding a motion to dismiss under Rule 12(b)(6), we follow the maxim that "a complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Under this legal standard, we accept all pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Oshiver v. Levin, Fishbein, Sedran, & Berman,* 38 F.3d 1380, 1384–85 (3d Cir.1994).

■ We note the heightened pleading standard for evaluating the sufficiency of civil rights complaints. *Frazier v. Southeastern Pennsylvania Transportation Authority,* 785 F.2d 65, 67 (3d Cir.1986). We are aware that the United States Supreme Court has held that a federal court may not apply a heightened pleading standard in civil rights actions against municipalities. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). However, the Court in *Leatherman* left open the question of whether a heightened pleading standard may be applied in cases involving individual government officials. 507 U.S. at 166, 113 S.Ct. at 1162, 122 L.Ed.2d at 523. Therefore, we will continue to apply the heightened pleading standard in cases brought against governmental officials in their personal capacities. Complaints satisfy this standard if they allege the specific conduct violating the civil rights at issue, the time and place of the unlawful conduct, and the identity of the responsible officials. *Colburn v. Upper Darby Township,* 838 F.2d 663, 666 (3d Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989).

## DISCUSSION

This case easily and logically separates into two events and their associated claims and defenses: the arrest and the detention. The County Defendants had nothing to do with Brown's arrest. Similarly, Stewart and the Federal Defendants had nothing to do with Brown's detention after delivering him to the police station for processing. We address the motions according to this structure.

### A. *Arresting Defendants' Motions as to William Brown*

1. *Federal Defendants' Motion to Dismiss or for Summary Judgment*

a. *Challenge to Section 1983 Claim: Not Acting under Color of State Law*

Federal Defendants first assert that they are not subject to liability under 42 U.S.C. § 1983 because they are federal officials acting in their official capacities under federal law. Memorandum of Law in Support of Motion to Dismiss, or in the Alternative, for Summary Judgment, Doc. No. 10, ("Fed. Defs' Br.") at 8. They cite 28 U.S.C. § 566(e)(1)(B) as their federal authority, which simply states that "[t]he United States Marshals Service is authorized to— ... (B) investigate such fugitive matters, both within and outside the United States, as directed by the Attorney General." *Id.* The Federal Defendants thus at least had general federal statutory support for their actions.

The only other information before the court about the Federal Defendants' authority is declaration testimony that they were acting as part of "Operation Trident," which "consisted of federal-state agencies making a concerted effort to apprehend federal-state felony offenders. Plaintiff's arrest on a state felony warrant was made as part of this effort by the Marshals Service with Pittsburgh Police Department Officers." Declaration of Robert Cocco, attached to Fed.Defs' Br., ¶ 3.

■ In our examination of this operation to determine whether action under color of Commonwealth law can be attributed to Federal Defendants,

a showing that actions "were under color of state law," ... does not require that the challenged action be pursuant to a state statute. Rather, the question is "whether there is a sufficiently close nexus between the State and the challenged action," *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974), or whether the state "has so far insinuated itself into a position of interdependence" that there is a "symbiotic relationship" between the actor and the state such that the challenged action can "fairly

be attributable to the state." *Krynicky [v. Univ. of Pittsburgh,* 742 F.2d 94, 99 (3d Cir.1984) ].

*Johnson v. Orr,* 780 F.2d 386, 390 (3d Cir.), *cert. denied sub nom. McDaniel v. Johnson,* 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986).[2] Simply put, the United States Court of Appeals for the Third Circuit has accepted the principle that "federal officials who conspire or act jointly with state officials may be liable under § 1983." *Jorden v. Nat'l Guard Bureau,* 799 F.2d 99, 111 n. 17 (3d Cir.1986), *cert. denied sub nom. Sajer v. Jorden,* 484 U.S. 815, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987), *citing Knights of the Ku Klux Klan v. East Baton Rouge Parish,* 735 F.2d 895, 900 (5th Cir.1984).

■ Here, the Federal Defendants arrested plaintiff William Brown on a Pennsylvania warrant for Pennsylvania crimes with the active and immediate participation of Pittsburgh police officers. Upon his arrest, plaintiff was delivered to the Pittsburgh police and was detained in the Allegheny County Jail. Thus, while the Federal Defendants' underlying identity as agents of the federal government is unquestioned, the actions they took in participating in the arrest of plaintiff Brown are so bound up with the operation of Commonwealth law that, at least on the current record, we find action under color of state law attributable to them. There is no evidence about (1) the level and source of supervision between local or Commonwealth officers and United States Marshals or (2) the text of any agreements between such entities which might alter this conclusion. Since the Federal Defendants appear to have derived the grounds for making the subject arrest from Commonwealth law in this particular case, their actions can legitimately be labelled as taking place under color of state law. *But see Amoakohene v. Bobko,* 792 F.Supp. 605 (N.D.Ill.1992) (Chicago police not subject to § 1983 even though arrest made under city ordinance, city arrest forms filled out, and detention in city jail; defendants were on detail to U.S. Drug Enforcement Administration drug task force pursuant to agreement, were subject to DEA supervision, and were engaging in anti-drug duties when arrest made).

Finally, we note that the Federal Defendants would not be dismissed even if they were found to have been acting solely under federal law in making the arrest, and thus outside the scope of section 1983. Persons allegedly deprived of constitutional rights by federal officials may seek relief through causes of action derived directly from the Constitution. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiff's Complaint can be read as making such allegations. Compl. ¶¶ 2, 5, 7, 29.

b. *Challenge to Section 1985 Claim*

Federal Defendants seek to dismiss plaintiffs' claim under 42 U.S.C. § 1985 for failure to allege a conspiracy with sufficient particularity. Fed.Defs' Br. at 13–16. Plaintiffs do not address this argument in their opposition brief.

■ "In order to state a claim under 1985(3),[3] a plaintiff must allege that defendants, motivated by a class-based invidiously discriminatory animus, conspired to deprive plaintiff of the equal protection rights of the laws or of equal privileges and immunities under the laws and that plaintiff was thereby injured." *Bougher v. Univ. of Pittsburgh,* 882 F.2d 74, 79 (3d Cir.1989). The threshold legal statement in Count Three, for violation of section 1985, is highly conclusory. Compl. ¶¶ 33–34. Still, this count relies on the allegations of fact which precede it. These alle-

2. The Third Circuit in *Johnson* cited the source of day-to-day supervision as a "crucial inquiry." 780 F.2d at 390. Such an inquiry seems less than crucial here where the court is not examining agency-wide daily operations, as in *Johnson,* but rather the discrete event of an arrest, where, because of the nature of the activity—spontaneous, fast-paced, and potentially dangerous—supervision is relevant but less likely to have crucial importance. In any event, we have no information that would allow us to identify the source of supervision during William Brown's arrest.

3. Plaintiffs also seeks to make a claim under 42 U.S.C. § 1985(2) proscribing interference with the judicial process, but it is phrased in the same terms as their section 1985(3) allegations. *Compare* Brown Compl. ¶¶ 33 and 34; Kuzak Compl. ¶¶ 22 and 23.

gations have adequate detail in identifying names, places, dates, words used, and particular physical movements. Nowhere in the Complaints, however, are there allegations of class-based animus necessary to successfully invoke section 1985(3). Accordingly, the Federal Defendants' motion will be granted as to Count Three. Plaintiffs will be have twenty days from the date of the accompanying order to amend their Complaint to remedy this deficiency, if they so choose.

### c. Qualified Immunity

■ In responding to the claims against them in their personal capacity, the Federal Defendants raise the affirmative defense of qualified immunity.[4] So that public officials can carry out their duties without undue fear of personal liability or harassing litigation, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978) (qualified immunity protects officials who make "mere mistakes in judgment, whether the mistake is one of fact or one of law"). Qualified immunity absolves law enforcement officers from personal liability for violations of constitutional rights if, to paraphrase a leading Supreme Court case to apply in the context of an arrest, a reasonable officer could have believed that his or her arrest was lawful, in light of clearly established law and the information the arresting officers possessed. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987).

■ The first question in our inquiry thus is whether the law allegedly violated was clearly established. "Defendants are entitled to qualified immunity as a matter of law if the applicable law was not clearly established at the time of the alleged constitutional violation." *Karnes v. Skrutski*, 62 F.3d 485, 492 (3d Cir.1995). It is apparent that the plaintiffs are alleging, against the arresting defendants, a violation of their right to be free from arrest without probable cause protected by the Fourth Amendment and a deprivation of liberty without due process. Compl. ¶ 27.

This inquiry affords an opportunity to narrow the issues. At the outset the court finds no valid claims against any current defendants based on the *issuance* of the warrant, though plaintiffs superficially challenge the validity of the warrant itself. Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss and/or for Summary Judgment ("Pls' Br."), Doc. No. 23, at 11. We have no reason to doubt the existence of probable cause for the issuance of an arrest warrant for Billy Brown based on the criminal complaint against him for stabbing two people and threatening to kill one of them. He was identified in the criminal complaint/warrant as a black male, age 40. Pls' Br.Ex. 4. Plaintiff William Brown's complaint boils down to the lack of probable cause to arrest *him;* that is, it was not reasonable to confuse him with Billy Brown, and such unreasonableness translates into a deprivation of his constitutional rights. The law that applies therefore is the law of arrest based on mistaken identity.

Such law is clearly established. The Supreme Court has summarized it as follows:

> The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed for every suspect released.... "Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person."

*Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979), *quoting Patterson v. New York*, 432 U.S. 197, 208, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281 (1977). And further:

> The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished "without due process of law." A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers—all

---

**4.** The defense of qualified immunity is available whether the Federal Defendants are sued under section 1983 or *Bivens*. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

of whom may be potential defendants in a § 1983 suit—is entirely consistent with "due process of law." Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

*Baker v. McCollan,* 443 U.S. at 145–46, 99 S.Ct. at 2695 (footnote omitted).

In *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), the Supreme Court considered the reasonableness of a mistaken arrest in passing on the validity of the corresponding search of an apartment. In *Hill,* the police had a warrant to arrest Hill. When they arrived at Hill's apartment, they found a man who resembled Hill and arrested him. He was present at the address police were given, fit the descriptions given by victims and accomplices, and could not, as an alleged friend of Hill's, adequately explain his presence in a locked apartment.

The Court found that the officers had acted reasonably under the circumstances, even though the innocent arrestee produced proper identification. The Court recognized that those who are apprehended and arrested attempt to avoid arrest by giving false identification. 401 U.S. at 803, 91 S.Ct. at 1110. In sum, no constitutional rights are violated solely by virtue of the fact that police arrest or detain an innocent person. *Dowling v. City of Philadelphia,* 855 F.2d 136, 141 (3d Cir.1988) ("The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense.").

Of course, the grounds for the arrest or detention must comport with clear constitutional standards. Law enforcement officers' failure to follow such standards places them outside the shield of qualified immunity. Here, as noted above, the application of qualified immunity to the arrest of William Brown rests on probable cause to arrest *him.* This question in turn rests on the reasonableness of the defendants' belief that plaintiff William Brown was the fugitive Billy Brown.

This is not an issue the court can resolve on the arresting defendants' motions. The application of qualified immunity often turns on the facts known by the public officials at the time of the challenged conduct. *Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. at 3039–40 ("the determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials"). The Third Circuit has noted that "the question of qualified immunity often cannot be resolved adequately until the dispositive facts have been presented at trial and reduced to findings." *Abdul–Akbar v. Watson,* 4 F.3d 195, 201 (3d Cir.1993); *accord Karnes,* 62 F.3d at 491 (3d Cir.) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination.").

The facts of the arrest currently before the court are disputed in two significant particulars such that summary judgment on qualified immunity is not possible. First, plaintiffs argue that no original documents in the Allegheny County Courthouse file relating to William Brown's arrest bear the 139 Charles Street address where he was apprehended. They attach an affidavit and copies of the file. Pls' Br.Ex. 4. Rather, the criminal complaint/warrant dated September 10, 1992 lists the typewritten address only as "ARCH ST." in Pittsburgh. One version of this document supplied by the Federal Defendants, however, also has "139 Charles St" handwritten next to the typewritten Arch Street entry. Fed.Defs' Br.Ex. A, attachment to Coc-

co Declaration. Obvious questions thus arise about which version of the criminal complaint/warrant the arresting defendants had, who added the address "139 Charles St," when and why this was done, upon what evidence that it was thought to be the address of Billy Brown, and the like. Examining the evidence on these questions should lead to a conclusion about the reasonableness of arresting William Brown at his Charles Street address when there are conflicting versions of the warrant before the court which unmistakably show a different address.

Second, the photograph of Billy Brown that the arresting defendants had will be a pivotal piece of evidence. The warrant was issued for William "Billy" Brown, black male, age 40. The Federal Defendants state the arrest warrant in question did not list a birth date for the suspect, but that the incident report prepared after the stabbing listed the assailant's birth date as November 9, 1948. *See, e.g.,* Cocco Decl., attached to Fed.Defs' Br., ¶ 4. The person arrested was William Brown, black male, born November 19, 1949. Brown Declaration, Ex. 1 to Pls' Br., ¶ 1.

In arresting William Brown instead of Billy Brown, asking for identification conceivably would not have altered the arresting defendants' course; on the contrary, it would have reinforced their belief. The other identifying characteristics they could examine on the spot with the information they had were race, sex, and age—and these match the criminal complaint/warrant. To this point, if instances of mistaken identity in arrests can be understood, they can be understood in cases like this, where an innocent person shares a common first and last name, race, sex, and age with a fugitive. If the arresting officers had no other information, this would be a much easier case.

With a photograph, however, the reasonableness of mistaken identity are narrowed in this sense: the person arrested should bear a resemblance to the person in the photograph sufficient to lead a reasonable law enforcement officer to conclude they were the same person. The Federal Defendants state that plaintiff matched the photograph they had. Defs' Br., Cocco Decl. ¶ 7; Holland Decl. ¶ 7; Holeczy Decl. ¶ 7. Plain-

tiff asserts that he looks nothing like the man in the photograph. Pls' Br.Ex. 1, Brown Decl. ¶¶ 7–8. Officer Stewart in her affidavit makes no affirmative statement that plaintiff Brown matched the photograph. She simply states that "William Brown asserted that the photograph was of a bearded person and he did not have a beard. In fact, he had a slight beard and moustache." Stewart Affidavit at 1, attached to Motion to Dismiss and/or for Summary Judgment, Doc. No. 18. This issue plainly is not suited for summary judgment. As the Third Circuit said in analogous circumstances, "[t]o the extent that the presence or absence of probable cause depended on the resemblance of [plaintiff] to the bank surveillance photographs taken at the time of the robbery, the question necessarily becomes a factual one for jury determination." *Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 191 (3d Cir.1984).

Moreover, there is considerable confusion surrounding this important piece of evidence. In his July 11, 1995 declaration to this court, defendant Robert Cocco supplied a mug shot of a black male and stated that it was the photograph the arresting officers had on the day of the arrest. *See* Fed.Defs' Br., Ex. 1 to Ex. A. We now know this is not accurate; in reality, the photograph attached to the July 11 declaration was William Brown's mug shot from the arrest in question. In a September 6, 1995 supplemental declaration, Cocco notified the court of this discrepancy and stated that he was unable to find the photograph, ostensibly of Billy Brown, that the arresting defendants had at the time of the arrest. Doc. No. 17, ¶ 4.

On November 29, 1995, Cocco filed an addendum to his supplemental declaration. Doc. No. 24. In it he states that he "recently located the actual photograph that was provided by the City of Pittsburgh Police Department with the arrest warrant at the time of plaintiff Brown's arrest." *Id.* ¶ 4. He attached a copy of the photograph.

The problem has not been solved. William Brown stated that the photograph the arresting defendants had at the time of the arrest showed a bearded black male. When he pointed out that he did not have a beard, they responded that he shaved it off. Brown

Decl. ¶ 7–8. As shown above, Officer Stewart's affidavit corroborates this account, stating that photograph used at the arrest showed a bearded man, that Brown protested for this reason, and that Brown had a slight beard and moustache. Stewart Aff., attached to Doc. No. 18. The photograph Cocco attaches as the actual photograph from the time of the arrest, however, unmistakably shows a clean shaven black man. Doubts thus remain about whether this new submission indeed was the photograph the arresting defendants had at the time of the arrest, since its accuracy is contradicted not only by plaintiff, but by defendant Stewart.

We presume nothing sinister from this occurrence (though it does say something about the care with which the defendants maintain evidence and testify about it to the court). Nonetheless, the remaining questions as to the existence and depiction of the original photograph leaves open a large question as to reasonableness. These questions and others, such as whether the arresting officers knew the height, weight, build, or other identifying characteristics of Billy Brown, and whether William Brown met that description, must await trial for resolution.

Questions as to these factors distinguish this case from *Miller v. District of Columbia*, Civ.A. No. 83–1492 (D.D.C.1984), on which the Federal Defendants heavily rely. *Miller* is a mistaken arrest case involving a joint U.S. Marshals–District of Columbia Metro Police fugitive task force. There, the address on the arrest warrant matched Miller's address, the police had only a general description on the warrant and no photograph, and before the arrest was carried out, the arresting officers sought to confirm her identity with a knowledgeable police officer. Unlike *Miller*, there are genuine questions about these important facts here.

Thus, with regard to the arrest, the court sees qualified immunity resting on the determination of the reasonableness of (1) making an arrest on Charles Street rather than Arch Street, and (2) in whether the photograph possessed by the arresting officers depicted or resembled plaintiff William Brown. Findings as to these facts are necessary before the court can reach the issue of qualified

immunity on the arrest: namely, under the facts as finally established, whether a reasonable officer would have arrested plaintiff William Brown.

### d. *Federal Tort Claims Act*

The Federal Defendants argue that plaintiffs' exclusive remedy lies in a claim of negligence under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. Fed.Defs' Br. at 16–18. Plaintiffs' claims are cognizable under the Constitution, however, and they have not made any tort claims, so this argument is not relevant.

### 2. *Stewart's Motion to Dismiss/for Summary Judgment*

Defendant Stewart's motion rests on the same qualified immunity argument advanced by the Federal Defendants. For the reasons stated above, Stewart's motion will be denied.

### B. *County Defendants' Motion to Dismiss*

The position of the County Defendants and their role in the wrongdoing alleged by plaintiff Brown also dictates that the claims against each should be examined separately. "Plaintiff Brown's claim against Warden Kozakiewicz is based upon the Warden's failure to take action for the wrongful incarceration and for failure to take action when William was assaulted and battered by Correctional Officer Gricar." Pls' Br. at 12. As for Gricar, Brown alleges excessive and unnecessary force. *Id.* at 13. County Defendants respond that "they cannot be found liable for the incarceration of the plaintiff due to the fact that they did not owe the plaintiff a duty to investigate his claim of misidentification or to release the plaintiff because of his statements that he was not the person who was the subject of the arrest warrant." Brief in Support of Motion to Dismiss, Doc. No. 16, ("County Defs' Br.") at 5–6. County Defendants' brief does not address the allegation that Gricar physically abused Brown.

### 1. *Warden Kozakiewicz*
#### a. *Failure to Investigate Unlawful Detention*

*Baker v. McCollan*, quoted above, establishes that the Constitution does not

provide relief for every case of mistaken detention. 443 U.S. at 145–46, 99 S.Ct. at 2695–96. Yet the Court also remarked in dictum that "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law.' " Id. at 145, 99 S.Ct. at 2695. The Third Circuit interprets Baker and provides further guidance in a recent case.

> A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protections against deprivations of liberty without due process of law. Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The Court in Baker made it clear that an arrest based on probable cause could not become the source of a claim for false imprisonment. Id. at 143–44, 99 S.Ct. at 2694–94. On the other hand, where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.... A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures.

Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir.1995). Thus, if a person was arrested without probable cause, his or her detention may implicate the Fourth Amendment. If he or she was arrested with probable cause, the detention may amount to a deprivation of liberty without due process.

The appellate courts tell us that the Constitution has a tolerance for errors in law enforcement. In some cases, the judge and jury at trial—and no sooner—supply the means by which innocent persons' rights to due process are vindicated. But due process and other constitutional protections would be frail indeed if the means for correcting mistakes of identity were available and easily applied, but were not because of a measured avoidance of responsibility to do so.

Brown alleges that he was detained for almost two months while the means to positively identify him were available to prison officials. Since a mug shot of Billy Brown apparently existed, he must have been previously arrested, and so his fingerprints could have been easily compared with William Brown's fingerprints. William Brown also states that he brought his complaint of mistaken identity to Kozakiewicz, who did nothing. Brown Decl., ¶ 19. If the number and content of Brown's protests were substantial, and the audience included Kozakiewicz, Brown may be able to state a constitutional claim.

We emphasize that we make no findings of fact as to such responsibility. We do find as a matter of law, however, that mere detention based on mistaken identity may work a deprivation of liberty without due process, or constitute an unreasonable seizure prohibited by the Fourth Amendment.[5] We also note that since plaintiff has named Kozakiewicz as a defendant in his personal capacity, plaintiff must show personal responsibility and involvement (or lack of it) by Kozakiewicz for this claim to succeed. As with the arresting defendants, resolution of this claim must await trial.

### b. Failure to Supervise Gricar

Brown implicates Corrections Officer Gricar for a single incident: a hard slap to the head on May 10, 1993. Compl. ¶ 20; Brown Decl. ¶ 14; Pls' Br. at 12–13. He argues that Warden Kozakiewicz should be liable for "failure to take action when [he] was assaulted and battered by Correctional Officer Gricar." Pls' Br. at 12. Kozakiewicz responds that he is entitled to qualified immunity because his actions violated no clearly established constitutional right. County Defs' Br. at 9–10.

 Supervisory liability exists under section 1983. It is based not on grounds of respondeat superior, but rather on actual knowledge and acquiescence. See, e.g., Baker v. Monroe Township, 50 F.3d 1186, 1194

5. Other district courts have expressly found potential constitutional liability based on mistaken identification. See Williams v. County of Sullivan, 157 F.R.D. 6, 8 (S.D.N.Y.1994); Jackson v. Doria, 851 F.Supp. 288, 291 (N.D.Ill.1994); Johnson v. City of Chicago, 711 F.Supp. 1465, 1469 (N.D.Ill.1989).

(1995); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1478 (3d Cir.1990). Thus, William Brown may properly state a claim against Kozakiewicz based on the actions of a subordinate if Kozakiewicz knew of and condoned or ignored Gricar's actions.

The next step in our analysis is whether Gricar's actions state a constitutional claim. If they do not, neither Kozakiewicz nor Gricar should remain in the case.

*Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989) dictates precision in identifying the source of constitutional right being invoked under section 1983 analysis. In the context of conditions or restrictions of pretrial detention, the Supreme Court has decided that pretrial detainees' constitutional rights are protected by the due process clause. *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1871–72, 60 L.Ed.2d 447 (1979). The Court has also expressly stated that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham,* 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10. Thus, the validity of Brown's claim involving the May 10, 1993 slapping incident is based on the degree to which it can be equated with punishment.

*Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), settles this question. *Hudson* involved a claim by a Louisiana inmate under section 1983 against three guards who punched and kicked him, resulting in bruises, swelling, and loosened teeth. Though there is a *de minimis* test applied to prison officials' physical contact with inmates, the Court stated that "[i]n the excessive force context, society's expectations are different [than in the conditions-of-confinement context]. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.... This is true whether or not significant injury is evident." 503 U.S. at 9, 112 S.Ct. at 1000. Thus the extent of Brown's injuries, which by his own admission were slight, provide no basis for questioning the validity of his claim of excessive force at this phase of the case.

It is true that *Hudson* involved the Eighth Amendment rather than the due process clause, and a convicted prisoner rather than a pretrial detainee. Yet these factors only add more weight to our application of *Hudson.* There of course is no constitutional problem in punishing a person adjudicated as guilty, so long as the punishment comports with the Eighth Amendment. By contrast, under the due process clause, pretrial detainees may not be subjected to conduct that is equivalent to punishment, because they have not been adjudicated as guilty. *Bell v. Wolfish,* 441 U.S. at 535 n. 16, 99 S.Ct. at 1872 n. 16. If a convicted prisoner therefore is constitutionally protected against malicious force even in the absence of significant injury, then the same protection should be even more readily available to a person to whom no guilt has attached.

Having determined that there are no threshold infirmities to plaintiff Brown's claim against Kozakiewicz for failure to supervise, we will deny the latter's motion to dismiss.

### 2. *Corrections Officer Gricar*

Gricar does not challenge plaintiff Brown's claim of excessive force against him personally. Accordingly, this claim remains for trial.

### C. *Arresting Defendants' Motions as to Irene Kuzak*

Plaintiff Kuzak claims that the arresting defendants deprived her "of her right to be free from unreasonable searches and seizures by wrongfully charging her with hindering apprehension. Because the officers deliberately and unlawfully executed the warrant against a man they knew or should have known was misidentified, Irene Kuzak's right to be free from unreasonable searches and seizures in her home were violated." Pls' Br. at 9–10. Federal Defendants argue that they had probable cause to arrest Kuzak because her actions when she answered the door on May 6, 1993 on their face constitute probable cause to believe that she violated 18

Pa.Cons.Stat.Ann. § 5105(1) and (5).[6] Federal Defendants assert that Kuzak both attempted to hide William Brown in her apartment and falsely informed them he was not home.

■ On one hand, law enforcement officers with probable cause to make an arrest, even if they arrest the wrong person, have the right to perform acts incident to the arrest which might otherwise be unconstitutional, such as carrying out searches. *See, e.g., Hill v. California,* 401 U.S. at 804–805, 91 S.Ct. at 1110–11. Again, the mere fact that Kuzak was arrested incident to an arrest based on mistaken identity raises no constitutional violation.

■ This is another matter we cannot resolve on summary judgment, however, because of disputed facts. Federal Defendants claim only that Kuzak "became confrontational and denied that William Brown was in the residence." Declaration of Robert Cocco ¶ 5, attached to Memorandum of Law in Support of Motion to Dismiss, or in the Alternative, for Summary Judgment, Doc. No. 7, in Civil Action No. 95–867; Decl. of Stanley Holland ¶ 5; Decl. of Paul Holeczy ¶ 5 (both verbatim of Cocco). Kuzak states in her declaration that the arresting defendants demanded Billy Brown, and that her husband has never been known by that name. She therefore told the defendants she did not know anyone by that name. Kuzak Decl., ¶¶ 4–8, attached to Pls' Br. Thus the court is presented with incomplete information about

the interaction between Kuzak and the arresting defendants—defendants do not provide enough detail for the court to assess probable cause for Kuzak's arrest—and genuine conflict of material fact in how the arresting defendants named the fugitive they were seeking.

■ Moreover, the probable cause for Kuzak's arrest will be influenced by the reasonableness of the decision to seek Billy Brown at 139 Charles Street, rather than Arch Street. If a reasonable officer would not have proceeded to 139 Charles Street, the stage would not have been set for the confrontation with Kuzak. Thus, the probable cause for Kuzak's arrest is also tied up in the arresting defendants' decision to serve the warrant at 139 Charles Street. Our discussion above demonstrates that this is another fact issue we cannot resolve on summary judgment.[7] Accordingly, the arresting defendants' motions as to Kuzak will be disposed of in the same manner as those filed against William Brown.

### ORDER

In accordance with the accompanying memorandum opinion:

1. The Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 9) by defendants' Paul Holeczy, Robert Cocco, and Stan Holland is GRANTED with regard to plaintiffs' claims under 42 U.S.C. § 1985; the balance of the motion is DENIED. Plaintiffs may amend their complaint within

---

**6.** Title 18 Pa.Cons.Stat.Ann. § 5105 states:

> A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for a crime, he:
> (1) harbors or conceals the other;
>
> . . . . .
>
> (5) volunteers false information to a law enforcement officer.

**7.** The arresting defendants note that Kuzak ultimately pleaded guilty to a charge of disorderly conduct, ostensibly justifying the arrest. Fed. Defs' Br. in Civ.A. No. 95–867 at 11 n. 3. A guilty plea to disorderly conduct, however, does not necessarily support arrest for hindering apprehension of a fugitive. Moreover, there is a question whether the disorderly conduct charge is justifiable at all. Under Pennsylvania law disorderly conduct requires "intent to cause public

inconvenience, annoyance or alarm...." 18 Pa. Cons.Stat.Ann. § 5503(a). The statutory definition of "public" includes apartment houses, which may include Kuzak's residence. *Id.* § 5503(c); Kuzak Decl. ¶¶ 2, 6. Since Kuzak appears to have been arrested *in* her apartment, however, there is legitimate doubt about the facial validity of this charge. *Groman v. Township of Manalapan,* 47 F.3d 628, 635–36 (3d Cir.1995) (summary judgment in § 1983 case reversed where disorderly conduct on private property did not justify arrest); *Commonwealth v. Beattie,* 411 Pa.Super. 177, 601 A.2d 297, 301–302 (1991) (no disorderly conduct on private property). Thus, the guilty plea to disorderly conduct tends to reflect more the realities of disposition of minor criminal cases and Kuzak's interest in returning to her small child, rather than her admission that the arresting officers had probable cause to believe she was harboring a fugitive.

twenty days from the date of this order, if they so choose, to remedy the defect in their section 1985 claim identified in the memorandum opinion.

2. The Motion to Dismiss and/or for Summary Judgment of defendant Beverly Stewart (Doc. No. 18) is DENIED.

3. The Motion to Dismiss (Doc. No. 15) of defendants Charles Kozakiewicz and Joe Gricar is DENIED.

In addition, the following pretrial schedule is imposed:

4. The parties shall complete discovery by April 19, 1996. All interrogatories, requests for production, requests for admission, and notices of deposition shall be served with sufficient time to allow responses to be made before the period for discovery closes.

5. Plaintiffs' pretrial narrative statement, conforming to Local Rule 16.1.4.A, shall be filed by May 9, 1996.

6. Defendants' pretrial narrative statements, conforming to Local Rule 16.1.4.B, shall be filed by May 29, 1996.

7. Material facts not identified in the pretrial narrative statements may be excluded upon objection or sua sponte. Witnesses or exhibits not identified in the pretrial narrative statements shall not be presented at trial. Plaintiffs should use numbers to designate exhibits; defendants should use letters.

8. The parties shall not amend or supplement their pretrial narrative statements without leave of court.

9. A pretrial conference will be held on June 21, 1996 at 2:00 p.m., Room 1008, United States Courthouse and Post Office, Pittsburgh, Pennsylvania. Trial counsel must attend. Counsel shall be prepared, and have appropriate authority, to discuss settlement at the conference. Counsel must also provide the Court with an estimate of the number of days required for trial.

SO ORDERED.