**Felix Ramon RAMIREZ, Plaintiff,**

v.

**UNITED STATES of America; United States Immigration and Naturalization Service; Doris Meissner, individually and in her official capacity as Commissioner of the INS; Warren A. Lewis, individually and in his capacity as District Director of INS's Newark Field Office; John and Jane Does 1–10, fictitious names for unknown agents, servants or employees of the INS individually and in their official capacities; County of Hudson; Hudson County Sheriff's Office; Joseph T. Cassidy, individually and in his capacity as Sheriff of Hudson County; Hudson County Jail; and John and Jane Does 11–20, fictitious names for unknown agents, servants or employees of the County of Hudson, individually and in their official capacities, Defendants.**

**No. CIV. 97–2693(WHW).**

United States District Court,
D. New Jersey.

March 16, 1998.

Thomas G. Roth, Roth & Fettweis, Newark, NJ, for Plaintiff Felix Ramon Ramirez.

Daniel J. Gibbons, Assistant U.S. Attorney, Newark, NJ, for Federal Defendants.

Michael Cifelli, Assistant County Counsel, Jersey City, NJ, for County Defendants.

## OPINION

WALLS, District Judge.

Plaintiff Felix Ramon Ramirez has filed suit against various federal and county defendants alleging that he was wrongfully arrested and imprisoned pursuant to an arrest warrant issued for a different individual. The federal defendants are the United States of America, the United States Immigration and Naturalization Service, INS Commissioner Doris Meissner, INS District Director Warren A. Lewis, and various yet unknown INS officers. The county defendants are the County of Hudson, the Hudson County Sheriff's Office, Hudson County Sheriff Joseph T. Cassidy, the Hudson County Correctional Center, and various yet unknown Hudson County employees. Plaintiff's seventeen count Complaint asserts *Bivens* claims for violation of Ramirez's constitutional rights, claims under the Federal Tort Claims Act ("FTCA"), claims pursuant to 42 U.S.C. § 1983, and pendent state law causes of action. The federal and county defendants have each filed motions to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6). The federal defendants move in the alternative for summary judgment. The Court decides these motions without oral argument pursuant to Fed.R.Civ.P. 78. For the reasons that follow, the Court grants in part and denies in part defendants' motions.[1]

---

1. Ramirez submitted a short letter brief in response to the defendants' reply briefs. Because Ramirez neither requested nor received permission from the Court to submit such a sur-reply, the Court has not considered his submission. *See* Local Rule 7.1.

## Factual Background [2]

On or about February 27, 1996, plaintiff Felix Ramon Ramirez arrived at Newark International Airport on a flight that originated in the Dominican Republic. He was detained by INS agents for two and one. half hours on the basis of an outstanding arrest warrant issued on March 23, 1993 for a person named Felix *Ramos* Ramirez. Plaintiff charges that the INS agents failed to explain to him the reason for his detention and made no attempt to ascertain whether he was indeed the individual sought by the warrant. The date of birth listed for the person named in the warrant is April 11, 1956. The plaintiff alleges that this is not his birth date. In addition, plaintiff asserts that the original arrest report for Felix Ramos Ramirez described the subject as having a tattoo on his arm. The plaintiff has no tattoos.

The INS agents transferred Ramirez to the custody of the Hudson County Sheriff's Office, and he was imprisoned in the Hudson County Correctional Center for fifteen days. Plaintiff claims that no one at the Sheriff's Office or the correctional facility made any effort to determine whether he was the subject of the outstanding warrant despite the discrepancies in name, birth date, and physical description.

On March 14, 1996, Ramirez met for the first time with an attorney, and was released from prison that day. Plaintiff contends that his detention, arrest, and imprisonment were violative of his constitutional rights and were the result of unlawful conduct by individual government officials as well as official policies and customs of the defendant entities. In addition, the plaintiff asserts various common law claims against the defendants including false arrest, false imprisonment, intentional and negligent infliction of emotional distress, and negligence.

**2.** As will be discussed *infra,* the Court treats these motions as motions to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). In setting forth the factual background of this matter, the Court relies exclusively on the plaintiff's Complaint and the outstanding arrest warrant, which plaintiff concedes is an undisputedly authentic document that may be considered.

## Plaintiff's Rule 56(f) Motion

■ The federal defendants move to dismiss the complaint pursuant to Rule 12(b)(6) or in the alternative for summary judgement. Although the county defendants label their motion as a motion to dismiss for failure to state a claim, they frame Point II of their brief as a request for summary judgment. Plaintiff argues that summary judgment is inappropriate at this stage in the litigation because the parties have not yet commenced discovery. Ramirez's counsel has submitted an affidavit pursuant to Fed.R.Civ.P. 56(f) requesting time to conduct discovery. Thus, as a threshold issue, this Court must determine whether it will treat the motion as a motion to dismiss for failure to state a claim or as a motion for summary judgment.

Rule 56(f) provides that when it appears that the party opposing the motion for summary judgment "cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit ... discovery to be had ...." The Third Circuit has instructed that "[w]hether such a motion should be granted depends, in part, on 'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" *Contractors Assoc. v. City of Philadelphia,* 945 F.2d 1260, 1266 (3d Cir.1991) (quoting *Lunderstadt v. Colafella,* 885 F.2d 66, 71 (3d Cir.1989)). However, if the information sought is in the possession of the moving party, "a district court should grant a Rule 56(f) motion almost as a matter of course unless the information is otherwise available to the non-movant." *Id.* at 1267.

In his sparce affidavit in support of this motion, plaintiff's counsel contends that discovery is necessary "to determine the information available to and possessed by the INS agents who detained Mr. Ramirez, the infor-

The Court does not refer to other submissions filed by the defendants, including the declaration of Venson Davis, INS Supervisory Immigration Inspector. The Court will consider documents outside of the pleadings only after plaintiff is given an opportunity to conduct limited discovery and submit any materials in opposition to a motion for summary judgment.

mation possessed by and forwarded to INS by Hudson County, the procedures followed by all defendants in detaining, arresting and imprisoning him, and the identity of the agents involved in the detention and imprisonment." Roth Aff. ¶ 3. The information that plaintiff seeks, if uncovered, could create a genuine issue of material fact as to the reasonableness of certain defendants' actions in this matter. The primary thrust of Ramirez's federal claims is that he was detained, arrested, and imprisoned in violation of his Fourth, Fifth, and Fourteenth Amendment rights. The merit of these claims all turn on the reasonableness of the actions of the individual defendants who were directly involved in his detention.

To assess the liability of officials in a civil rights action based on a claim of false arrest, a court must determine whether there was probable cause for the arrest. *See Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir.1988). Probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir.1995). "Where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir.1995). Consequently, the merit of the *Bivens* and § 1983 claims under the Fourth, Fifth, and Fourteenth Amendments all depend upon the information known to the individual defendants who detained the plaintiff and who were directly responsible for his imprisonment. The success of the defendants' qualified immunity defense also turns on the reasonableness of the officers' actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (qualified immunity applies when "conduct does not violate clearly established ... rights of which a reasonable person would have known").

Hence, the critical issue now before the Court is the reasonableness of the defendants' belief that the person named in the warrant was the plaintiff. The plaintiff should be permitted to conduct discovery to determine what, if any, information the INS and county officials had to verify the plaintiff's identity. The federal defendants have filed an affidavit of Venson Davis, the Supervisory Immigration Inspector who was on duty when the plaintiff arrived at the airport, which details the procedures that he used to confirm that the plaintiff was the subject of the warrant. Ramirez should be given the opportunity to conduct discovery on this issue and submit any affidavits which rebut or contradict the representations made by that affidavit. Discovery is necessary because the information upon which the agents based their decision to detain and ultimately arrest and imprison the plaintiff is obviously in their exclusive possession.

The Court is mindful of the Supreme Court's admonition that one of the purposes of the "qualified immunity standard is to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government'" and that "qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (quoting *Harlow*, 457 U.S. at 817). "Unless the plaintiff's allegations state a claim for violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Here, the Court finds that, taking all of plaintiff's allegations as true, including the claim that defendants made no effort to ascertain whether Ramirez was the person sought in the warrant despite differences in his name, birth date, and physical description, and drawing all reasonable inferences in favor of the plaintiff, the Complaint states a claim for violation of the clearly established right to be free from unreasonable seizures and restraints on one's liberty without due process. The Court declines to look to Davis' affidavit and convert this motion to a motion for summary judgment at this time because plaintiff, consistent with his position that this should be treated as only a Rule 12(b)(6) motion, has not submitted any affida-

vits or declarations in opposition. The Court can only assume that plaintiff chose not to submit any supplemental materials because he was under the impression that this motion would be treated as a motion to dismiss. Plaintiff is granted 50 days from the date of this Opinion and Order to conduct limited discovery on the sole issue of the reasonableness of the individual defendants' conduct as it relates to his detention, arrest, and imprisonment. After the expiration of this period, plaintiff will be required to submit any discovery or other material in opposition to defendants' motions for summary judgment. The Court will then determine whether summary judgment is appropriate on the *Bivens* and § 1983 claims.[3] If, after discovery, plaintiff is still unable to name the fictitious defendants, the claims against them may be summarily dismissed. *See Scheetz v. Morning Call, Inc.,* 130 F.R.D. 34 (E.D.Pa.1990) (fictitious names may be employed until the plaintiff has had a reasonable opportunity to learn the identities of these unknown defendants through discovery).

Aside from their qualified immunity defense, the movants have raised other arguments in support of their motions. Applying the standard for a motion to dismiss for failure to state a claim, the Court will now address the merits of these other contentions.

### Legal Standard

On a Rule 12(b)(6) motion, the court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir.1994). The question is whether the

plaintiff can prove any set of facts consistent with his allegations that will entitle him to relief, not whether he will ultimately prevail. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. *See Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Washington Legal Found., v. Massachusetts Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993); *Violanti v. Emery Worldwide A–CF Co.,* 847 F.Supp. 1251, 1255 (M.D.Pa.1994). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. *See* Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### Claims Against Federal Defendants

I. *BIVENS CLAIMS AGAINST THE NAMED FEDERAL DEFENDANTS*

A. *Whether the Complaint Alleges a Cognizable Constitutional Claim Against Defendants Meissner and Lewis*

 Counts One, Two, and Three assert claims against the INS, INS Commissioner Doris Meissner, INS District Director Warren A. Lewis, and as yet unknown INS officers for violation of plaintiff's Fourth and Fifth Amendment rights under a theory of liability first articulated in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The individual defendants are named in their personal ca-

---

**3.** The federal and county defendants both argue that the claims should be dismissed based on the Supreme Court's holding in *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In that case, the plaintiff was mistakenly arrested based on a warrant which bore his name but had been intended for his brother. The plaintiff was imprisoned for three days despite his repeated protests of mistaken identity. The Supreme Court found that the plaintiff did not state a cognizable claim under § 1983 because he had not been deprived of any constitutional right. While this Court acknowledges that

an arrest pursuant to a facially valid warrant does not violate the Fourth Amendment, *see White v. Olig,* 56 F.3d 817 (7th Cir.1995); *Brown v. Patterson,* 823 F.2d 167 (7th Cir.), *cert. denied,* 484 U.S. 855, 108 S.Ct. 162, 98 L.Ed.2d 117 (1987), this case is distinguishable from *Baker* in that here the outstanding warrant is alleged to have contained a slightly different name and birth date. Thus, there is a potential question as to whether the individual defendants acted reasonably when they detained, arrested, and imprisoned the plaintiff based on this warrant.

pacity. The Third Circuit has imposed a heightened pleading standard in civil rights actions; complaints against government officials in their personal capacity must "contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs." *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3d Cir.) (quoting *Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir.1981)), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). To satisfy this standard, a plaintiff must "allege the specific conduct violating the plaintiff's rights, the time and place of that conduct, and the identity of the responsible officials." *Id.* In a *Bivens* action against multiple federal defendants, "the plaintiff must plead the personal involvement of each defendant with specificity and with sufficient facts to overcome a likely defense of immunity." *Biase v. Kaplan*, 852 F.Supp. 268, 287 (D.N.J.1994) (quoting *Rallis v. Stone* 821 F.Supp. 466, 469 (E.D.Mich.1993)).

■ The Complaint fails to specify how Doris Meissner, as Commissioner of the INS, and Warren Lewis, as INS District Director, directly acted to deprive plaintiff of his constitutional rights. In fact, after being identified at the beginning of the Complaint, Meissner and Lewis are never specifically mentioned again. The only possible reference to these defendants occurs in paragraphs 36 and 37 of the Complaint:

36. Defendants knowingly and intentionally breached their duty to train and supervise ... agents and other personnel under their control, resulting in the deprivation of plaintiff's constitutional and civil rights ....

37. Alternatively, defendants recklessly, wantonly and negligently failed to train and supervise the conduct of INS agents and other personnel under their control, resulting in the deprivation of plaintiff's constitutional and civil rights.

■ In *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the Supreme Court held that the supervising official does not violate a victim's constitutional rights unless he or she has played "an affirmative part" in the alleged misconduct of the subordinates. The Third Circuit has found that "while supervising public officials may not in any way authorize, encourage, or approve constitutional torts, they have no affirmative duty to train, supervise or discipline so as to prevent such conduct." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir.1986) (dismissing *Bivens* claim against the Director of Bureau of Prisons alleging that his failure to train, supervise, and discipline his subordinates resulted in plaintiff's injuries); *see also Brown v. Grabowski*, 922 F.2d 1097, 1119–20 (3d Cir.), *cert. denied*, 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). Mere failure to train and supervise, absent proof of direct participation in the subordinates' unconstitutional conduct, does not form the basis for a constitutional claim. *See Brown*, 922 F.2d at 1120. Consequently, plaintiff does not state a cognizable *Bivens* claim against Meissner and Lewis. These claims are dismissed without prejudice. *See Rose v. Bartle*, 871 F.2d 331, 354 (3d Cir. 1989) (when a plaintiff's pleadings are insufficient to support a civil rights action, the plaintiff should be permitted the opportunity to cure the factual deficiency).

### B. *Whether the INS Is Immune*

■ Furthermore, Ramirez may not pursue his *Bivens* claim against the INS, a federal agency, because of the doctrine of sovereign immunity. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). There is no suggestion that the INS has waived its immunity. Additionally, the Supreme Court has recently held that a *Bivens* action may only be brought against individual federal officials, not against a federal agency. *See id.*, 510 U.S. at 484–85.

Consequently, Counts One, Two, and Three are dismissed as to Meissner, Lewis, and the INS. As previously mentioned, the Court will defer judgment on the merits of the *Bivens* claims against the as yet unknown INS agents.

### II. *FTCA CLAIMS*

■ Counts Four and Ten through Seventeen raise various tort claims against the

federal defendants.[4] Such claims are governed by the FTCA, 28 U.S.C. § 1346(b), 2401, 2671, *et seq.* The FTCA waives the sovereign immunity of the United States for certain torts committed by federal employees within the scope of their employment. Specifically, § 1346(b) grants federal courts jurisdiction to hear claims that are:

> against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The United States is the only proper defendant in such a suit. The remedy against the United States is exclusive; a plaintiff may not bring an action against the employee or federal agency whose acts gave rise to the injury. *See* 28 U.S.C. § 2679(b)(1)[5]; *Dilg v. United States Postal Service,* 635 F.Supp. 406, 407 (D.N.J.1985). Courts must strictly adhere to the limited waiver of immunity which the FTCA represents. *See Bialowas v. United States,* 443 F.2d 1047, 1048–49 (3d Cir.1971). Therefore, all tort claims against the INS, Meissner, Lewis, and the as yet unknown INS agents must be dismissed because these parties are immune to such causes of action.

**4.** The county defendants are also named in Counts Ten through Seventeen. The viability of the tort claims against them will be discussed *infra.*

**5.** 28 U.S.C. § 2679(b)(1) provides in pertinent part:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting form the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim . . . .

**6.** 28 U.S.C. § 2680(h) provides that section 1346(b) does not apply to:

After the federal defendants filed their motion, the plaintiff amended his Complaint and added the United States as a defendant. Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual" would be under applicable state law. 28 U.S.C. § 2674. Does the Complaint state any cognizable tort claims against the United States?

### A. *False Arrest and False Imprisonment*

■ Count Four of the Complaint alleges that the United States, acting through the INS and its agents, "falsely arrested and imprisoned plaintiff by detaining him at the airport for two-and-a-half hours and then unlawfully transferring him to the custody of the Hudson County Sheriff's Office and the Hudson County Jail." Compl. ¶ 48. In general, the intentional tort exception in the FTCA retains immunity for the United States in cases involving claims arising out of intentional torts such as false arrest or false imprisonment. *See* 28 U.S.C. § 2680(h). However, the exception does not apply "to acts or omissions of investigative or law enforcement officers of the United States Government[.]" *Id.*[6] Because the Complaint alleges wrongful conduct by INS agents who may be classified as "law enforcement officers of the United States Government," the United States is not immune to this claim. Accordingly, the claim will not be dismissed if plaintiff has stated a cause of action for false imprisonment or false arrest under New Jersey law.

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purposes of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

434

■ False arrest or false imprisonment is "the constraint of the person without legal justification." *Fleming v. United Parcel Service, Inc.,* 255 N.J.Super. 108, 155, 604 A.2d 657 (Law Div.1992). New Jersey courts treat false arrest and false imprisonment as the same tort. *See Price v. Phillips,* 90 N.J.Super. 480, 484, 218 A.2d 167 (App.Div. 1966). The tort consists of two elements: "(1) an arrest or detention of the person against his will; (2) done without proper legal authority or 'legal justification.'" *Fleming,* 255 N.J.Super. at 155, 604 A.2d 657. Whether the INS agents had "legal justification" to detain Ramirez is intertwined with the inquiry as to whether the agents had probable cause to believe that he was the individual sought in the warrant. Because the Court has reserved judgment on this question until a limited amount of discovery has been conducted, the Court will revisit the merits of this claim when it rules on the motion for summary judgment.

Counts Ten and Eleven merely iterate these claims for false arrest and false imprisonment. To avoid redundancy, Counts Ten and Eleven are dismissed.

### B. *Intentional and Negligent Infliction of Emotional Distress*

■ In Counts Twelve and Thirteen, Ramirez asserts claims against all of the defendants for intentional and negligent infliction of emotional distress. The charge against the United States is based on the two and one half hour airport detention.

■ "Intentional infliction of emotional distress consists of 'extreme and outrageous conduct [which] intentionally or recklessly causes severe emotional distress to another.'" *Lingar v. Live–In Companions, Inc.,* 300 N.J.Super. 22, 34, 692 A.2d 61 (App. Div.1997) (citing *Buckley v. Trenton Sav. Fund Soc'y,* 111 N.J. 355, 366, 544 A.2d 857 (1988)) (quoting Restatement (Second) of Torts § 46 (1965)). A plaintiff must allege the following elements to state a claim for intentional infliction of emotional distress: (1) conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community," (2) a deliberate act, committed with the intent to cause emotional distress or with deliberate disregard of a high probability that emotional distress would occur, (3) proximately causing emotional distress that is "so severe that no reasonable man could be expected to endure it." *Buckley,* 111 N.J. 355, 366, 544 A.2d 857 (1988) (quoting Restatement (Second) of Torts § 46, comments d and j (1965)); see also *Green v. City of Paterson,* 971 F.Supp. 891, 911 (D.N.J.1997). It is the responsibility of the court to determine as a matter of law whether the required level of distress could reasonably be found. *See Buckley,* 111 N.J. at 367, 544 A.2d 857; *Fleming,* 255 N.J.Super. at 167, 604 A.2d 657.

Plaintiff has failed to allege conduct on the part of the INS agents that would support a cause of action for intentional infliction of emotional distress. According to the Complaint, the agents detained the plaintiff for two and a half hours based on an allegedly false and unreasonable assumption that he was the man named in the warrant. The plaintiff does not contend that he was beaten, held under unbearable conditions, or otherwise severely mistreated in any manner during this period. Although the reasonableness of the detention will not be evaluated at this juncture, as a matter of law, it does not rise to the level of outrageous and extreme conduct committed with an intent to produce severe emotional distress. Ramirez does not allege any specific traumatic symptoms that he incurred as a result of this detention. He has failed to assert facts and circumstances that would allow a reasonable jury to infer that this two and a half hour detention resulted in severe emotional distress that no reasonable person could be expected to endure.

■ To establish a claim for negligent infliction of emotional distress, a plaintiff must show: "(1) [t]he death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate family relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress." *Fleming,* 255 N.J.Super. at 166, 604 A.2d 657. The plain-

tiff clearly has not alleged facts to support this cause of action because there is no reference to the infliction of any injury to another.

Accordingly, Counts Twelve and Thirteen are dismissed.

### C. *Negligence*

██ Ramirez also brings a negligence cause of action against all of the defendants. As mentioned above, the only proper federal defendant in a FTCA claim is the United States. The plaintiff contends that the INS agents negligently handled the events leading to his detention. To prevail under a negligence theory, the plaintiff must establish these elements: (1) duty of care; (2) breach of that duty; (3) proximate cause; and (4) actual damages suffered by the plaintiff. *See Weinberg v. Dinger*, 106 N.J. 469, 484, 524 A.2d 366 (1987). The federal defendants contend that the INS officers owed the plaintiff no duty to refrain from detaining him after they had noted an outstanding warrant for a person with a very similar name and a nearly identical birth date. The agents, however, did have a duty to act with a reasonable level of care when detaining the plaintiff. The question therefore is whether the agents acted unreasonably in breach of their duty. If the agents did not exercise the level of care that a reasonably prudent INS agent would have employed under the circumstances, then a cause of action for negligence may exist. This inquiry again depends upon the reasonableness of the conduct of the INS agents. Because the Court defers judgment on this issue pending limited discovery, the claim of negligence against the United States withstands the motion to dismiss.[7]

### Claims Against County Defendants

### I. *SECTION 1983 CLAIMS*

#### A. *Allegations Against the Individual County Defendants*

██ In Counts Five through Nine, plaintiff alleges that the various county defendants deprived him of his constitutional rights by falsely arresting and imprisoning him. To prevail in an action under § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States by a person acting under the color of state law. *See Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir.1993). The parties do not dispute that the county defendants are state actors. Thus, the question is whether the plaintiff has stated a claim for violation of his constitutional rights.

The Court interprets plaintiff's claim of mistaken identity as giving rise to two separate constitutional claims: (1) that the county defendants subjected him to an illegal seizure in violation of the Fourth Amendment when they initially arrested him pursuant to the outstanding warrant; and (2) that they deprived him of his liberty without due process in violation of the Fourteenth Amendment when they wrongfully imprisoned him for fifteen days. *See Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (distinguishes an unlawful arrest from a claim of false imprisonment); *Johnson v. City of Chicago*, 711 F.Supp. 1465 (N.D.Ill. 1989) (same). As stated, the Court will defer judgment on whether the Hudson County Sheriff's Office acted reasonably when it arrested the plaintiff after the INS agents had transported him to it. Much will depend upon the available information that either verified or contradicted the Office's conclusion that Ramirez was the subject of the warrant. The Court will permit the plaintiff to conduct limited discovery with regard to this question.

With regard to the as yet unnamed agents of the Hudson County Correctional Center, their actions under certain circumstances may be found to have infringed Ramirez's constitutional rights. Although the Supreme Court made it clear in *Baker* that an arrest based on a facially valid warrant could not become the source of a false imprisonment claim, "where the police lack probable cause

---

7. Defendants also contend that the negligence claim is barred by the qualified immunity defense. It is true that a public official's qualified immunity applies to common law claims as well as to civil rights actions. *See Capone v. Marinel-*

li*, 868 F.2d 102, 106 n. 6 (3d Cir.1989). However, the Court reserves judgment on the merits of the qualified immunity defense until the plaintiff is given the opportunity to submit opposition materials to the motion for summary judgment.

to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir.1995). Furthermore, the Supreme Court has left open the possibility that, after a lengthy period of confinement, detention pursuant to an a valid warrant but based on mistaken identity may work a deprivation of liberty without due process. *See Baker*, 443 U.S. at 145 (Court assumed that "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law'"); *see also Brown v. Stewart*, 910 F.Supp. 1064, 1074 (W.D.Pa.1996) (finding that, as a matter of law, detention based on mistaken identity may support a § 1983 action against a warden who failed to investigate the plaintiff's repeated protests of innocence during his nearly two month confinement). Therefore, plaintiff's § 1983 claims against the fictitious county defendants will withstand this motion to dismiss and the Court will revisit the merit of the claims at the time of the motion for summary judgment.[8]

### B. *Allegations Against the County Entities*

 The defendants also argue that the § 1983 claims against the county entities should be dismissed because the plaintiff has failed to allege that his injuries were the result of a county policy or custom.[9] It is well settled that a plaintiff must establish the existence of a policy or custom that caused the alleged constitutional violation in order to assert a claim against a municipality under § 1983. *See Monell v. Department of Social*

*Servs.*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality may not be held liable under § 1983 on a respondeat superior theory. *See id.* at 691.

Here, the plaintiff has alleged that the proximate and direct result of his constitutional injury was an official municipal policy that "included the failure to establish adequate and efficient procedures to determine the true identity of arrestees and detainees, and the concomitant failure to train and supervise employees, officers, agents, and servants in such procedures." Compl. ¶ 57. The Supreme Court has held that federal courts should not apply a "heightened pleading standard" in civil rights cases alleging municipal liability under § 1983. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The plaintiff's allegation that his alleged false arrest and imprisonment was caused by the municipality's official policy is sufficient to withstand a Rule 12(b)(6) motion.

 The Court recognizes, however, that liability may be imposed on the county for failure to properly train and supervise its officers only if this failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Plaintiff has alleged that the County's policies and inadequate training program reflect "deliberate indifference to the risk that arrestees and detainees ... would be falsely arrested and falsely imprisoned." Compl. ¶ 59. Whether Ramirez will be able to produce evidence to support this claim at trial or on a motion for summary judgment remains

---

8. The Court notes that if the plaintiff names specific prison officials as defendants after discovery, to establish a § 1983 claim against them, he must show: (1) the prison official knew that Ramirez claimed that he was being imprisoned based on mistaken identity; (2) "the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to [Ramirez's] plight[;]" and (3) "a causal connection between the official's response to the problem and the infliction of the unjustified detention." *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir.1989).

9. To the extent that the plaintiff sues Sheriff Cassidy and the fictitious individual county defendants in their official capacity, his claims against them are equivalent to a claim against the county itself. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Accordingly, the discussion concerning the liability of the municipality also governs the claims against the officers in their official capacities.

to be seen. In addition, he must establish that the policy or custom was the "moving force [behind] the constitutional violation." *City of Canton, Ohio*, 489 U.S. at 389. And, obviously, the municipality cannot be held liable if the plaintiff is found to have suffered no underlying constitutional wrong. Notwithstanding this ultimate requirement of proof, the § 1983 claims against the municipal entities and the officers in their official capacities cannot be dismissed at this early stage in the litigation.

## II. COMMON LAW CLAIMS

■ As reviewed, Counts Ten through Seventeen assert various common law claims against the defendants for false arrest and imprisonment, intentional and negligent infliction of emotional distress, and negligence. The county defendants argue that these causes of action are barred by the New Jersey Tort Claims Act which immunizes them against claims of emotional distress:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00.

N.J.S.A. § 59:9–2(d). The legislative comment to this section explains its rationale:

> The limitation on the recovery of damages in subparagraph (d) reflects the policy judgment that in view of the economic burdens presently facing public entities a claimant should not be reimbursed for non-objective types damages, such as pain and suffering, except in aggravated circumstances .... The limitation that pain and suffering may only be awarded when medical expenses exceed $1,000 insures that such damages will not be awarded unless the loss is substantial.

■ This provision bars recovery for pain and suffering based on subjective evidence or insubstantial injuries. *See Collins v. Union County Jail*, 150 N.J. 407, 413, 696 A.2d 625 (1997); *Ayers v. Township of Jackson*, 106

N.J. 557, 525 A.2d 287 (1987). In *Ayers*, the New Jersey Supreme Court found that claims of emotional distress and mental trauma, in the form of "subjective symptoms of depression, stress, health concerns, and anxiety[,]" are encompassed by the term "pain and suffering" in § 59:9–2(d) and are not compensable by damages from a public entity or official. *Ayers*, 106 N.J. at 576, 525 A.2d 287. A plaintiff must produce objective medical proof that he has sustained a permanent injury to recover. *See Randall v. State*, 277 N.J.Super. 192, 649 A.2d 408 (App.Div.1994) (affirming trial court's decision to grant summary judgment because plaintiff did not submit evidence to establish the aggravated circumstances required by § 59:9–2(d)).

In *Marion v. Borough of Manasquan*, 231 N.J.Super. 320, 555 A.2d 699 (App.Div.1989), the Appellate Division specifically treated the scope of compensability for emotional distress claims arising from alleged false imprisonment. There officers of the beach patrol had stopped plaintiffs for walking on the beach in bathing attire without a required permit in alleged violation of a local ordinance. The plaintiffs were taken to police headquarters for questioning and eventually released after approximately two hours. Plaintiffs brought a false imprisonment suit against the police officers and the Borough of Manasquan. In affirming the lower court's grant of summary judgment to the defendants because § 59:9–2(d) precluded recovery, the Appellate Division emphasized that the emotional distress plaintiffs suffered from the unlawful detention "did not result in physical symptoms, nor did it require medical or psychiatric treatment." *Marion*, 231 N.J.Super. at 332, 555 A.2d 699. The dismissal was sustained because the plaintiffs failed to demonstrate the aggravated circumstances delineated in § 59:9–2(d).

Ramirez fails to specify the kind of injury he suffered from the alleged tortious conduct. In each state law claim he merely recites he merely recites that he "has suffered damages." At the end of the Complaint, he seeks compensatory damages of $3,000,000 and punitive damages of $10,000,000. The plaintiff has made no allegation that he has sustained any physical injury or received any medical treatment because of

438

his arrest and imprisonment. Consequently he has not alleged recoverable damages under the New Jersey Tort Claims Act. His common law claims against the County defendants for compensatory damages are dismissed without prejudice.

 Ramirez also claims to be entitled to punitive damages under his common law claims. Because the New Jersey Tort Claims Act bars recovery of punitive damages against a public entity, *see* N.J.S.A. § 59:9–2(c)[10], plaintiff's common law claims against the County of Hudson, the Hudson County Sheriff's Office, and the Hudson County Correctional Center are dismissed in their entirety. In contrast, a public official may be held liable for punitive damages. "[I]n a false imprisonment case, punitive damages may be awarded even where there are no compensatory damages." *Marion*, 231 N.J.Super. at 333, 555 A.2d 699. To recover punitive damages, Ramirez must show "circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that [the defendant's] conduct may be called wilful or wanton." *Berg v. Reaction Motors Div.*, 37 N.J. 396, 413, 181 A.2d 487 (1962). The Court grants plaintiff the opportunity to present evidence to support this punitive damages claim at the time of defendants' motion for summary judgment.

### Conclusion

For the foregoing reasons, the defendants' motions to dismiss are granted in part and denied in part. Plaintiff is granted 50 days to conduct limited discovery as to the reasonableness of the actions of the individual defendants. The Court will then determine whether summary judgment is appropriate on the claims that have survived these motions to dismiss.

**SO ORDERED.**

10. Section 59:9–2(c) states: "No punitive or exemplary damages shall be awarded against a public entity."