**Felix Ramon RAMIREZ, Plaintiff,**

v.

**UNITED STATES of America; John Thompson, Deneise Dungee, Venson Davis, Sharon Dooley, James Fitzgerald, Tracey Ann Mccormick, and Frederick Smith, as agents, servants or employees of the INS individually and in their official capacities; County of Hudson; Hudson County Sheriff's Office; Joseph T. Cassidy, individually and in his capacity as Sheriff of Hudson County; Hudson County Jail; and Rob Reinecke, George Kochell, Thomas Foley, Lillie Bale, Trish Gonzalez, Alfred Crawford, and Carlos Carames, as agents, servants or employees of the County of Hudson, individually and in their official capacities, Defendants.**

Civ. No. 97–2693 (WHW).

United States District Court,
D. New Jersey.

Jan. 4, 2000.

Thomas G. Roth, Roth & Fettweis, Newark, NJ, for Plaintiff Felix Ramon Ramirez.

Daniel J. Gibbons, Assistant U.S. Attorney, Newark, NJ, for Federal Defendants.

## OPINION

WALLS, District Judge.

Defendants, United States of America, John Thompson, Deneise Dungee, Venson Davis, Sharon Dooley, James Fitzgerald, Tracey Ann McCormick and Frederick Smith, move for summary judgment to dismiss Counts I–III (*Bivens* claims against the individual defendants), IV (FTCA claim for false arrest against the United States), and XIV–XV (claims for negligence against the United States) of the complaint of plaintiff Felix Ramon Ra-

mirez. The individual defendants are Immigration and Naturalization Service ("INS") inspectors. Pursuant to Fed. R. Civ. P. 78, this motion is decided without oral argument. The motion is granted.

## Factual Background[1]

On or about February 27, 1996, plaintiff Felix *Ramon* Ramirez arrived at Newark International Airport on a flight that originated in the Dominican Republic. He was detained by INS agents for approximately five hours on the basis of an outstanding arrest warrant issued on March 23, 1993 for a person named Felix *Ramos* Ramirez. Plaintiff charges that the INS agents failed to explain to him the reason for his detention and made no attempt to ascertain whether he was indeed the individual sought by the warrant. The INS agents made the decision to parole plaintiff into the custody of the Hudson County Sheriff's Office, and he was imprisoned in the Hudson County Correctional Center for fifteen days. Plaintiff's complaint alleges that no one at the Sheriff's Office or the correctional facility made any effort to determine whether he was the subject of the outstanding warrant despite discrepancies in name, birth date, and physical description.

On March 14, 1996, Ramirez met for the first time with an attorney, and was released from prison that day. Plaintiff contends that his detention, arrest, and imprisonment violated his constitutional rights and were the result of unlawful conduct by individual government officials as well as official policies and customs of the defendant entities. Plaintiff filed his initial complaint on May 23, 1997.

All defendants then moved to dismiss the complaint pursuant to Rule 12(b)(6) or in the alternative for summary judgment. On March 16, 1998, this Court dismissed all claims against Doris Meissner, Commissioner of the INS, Warren Lewis, Dis-

---

1. An earlier decision sets out additional factual background. *See Ramirez v. INS,* 998 F.Supp. 425 (D.N.J.1998).

trict Director of the INS's Newark Office, and the INS. The court also dismissed negligence claims against INS and Hudson County officials as barred by the Federal Tort Claims Act ("FTCA") and the New Jersey Tort Claims Act ("NJTCA"), respectively. *See Ramirez v. United States,* 998 F.Supp. 425 (D.N.J.1998). Plaintiff was given time to conduct discovery under Fed.R.Civ.P. 56(f) "as to the reasonableness of the actions of the individual defendants." *See id.* The claims that remain after the March 1998 decision are: (1) *Bivens* claims against individual INS agents (Counts I, II & III); (2) an FTCA claim against the United States for false arrest (Count IV); (3) negligence claims against the United States (Counts XIV and XV); and (4) claims under 42 U.S.C. § 1983 against the county defendants (Counts V–IX). After discovery, defendants renewed their motions to dismiss (now converted into motions for summary judgment) the remaining claims.[2]

Plaintiff amended his complaint on July 9, 1999 to name the individual INS and Hudson County officials formerly listed as "John Does."[3] He assures the Court that the amended complaint does not revisit any of the claims dismissed in the March 1998 decision. *See* Order Permitting Amended Complaint at 2, Docket #28 (Magistrate Judge Pisano, June 16, 1999) (acknowledging "assertions in plaintiff's reply papers stating that he does not seek to reassert rights of action that have previously been dismissed by Judge Walls").

### *ANALYSIS*

#### A. Standard

Because the Court authorized discovery, defendants' motions will be treated as motions for summary judgment to dismiss the complaint pursuant to Fed.R.Civ.P. 56(b). Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *See id.* at 248, 106 S.Ct. 2505. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett,* 477 U.S. 317, 318, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party opposing a motion for summary judgment must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Sound Ship Bldg. Co. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.1976), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Wahl v. Rexnord, Inc.* 624 F.2d 1169, 1181 (3d Cir. 1980).

---

**2.** The Hudson County defendants' motion for summary judgment will be addressed in a separate opinion.

**3.** On December 6, 1999, the clerk's office entered default against the named INS officers. The officers filed notice in opposition to entry of default later that day. The Court vacates this default under Fed.R.Civ.P. 55. Regardless of the named officers' failure to answer, default was improperly entered while a dispositive motion (made on behalf of these officials by the United States Attorney) was pending.

**B.** *Bivens* Claims (Counts I–III)

█ Counts I–III assert claims against individual INS inspectors for violations of plaintiff's Fourth and Fifth Amendment rights under a theory of liability first articulated in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In a *Bivens* action against multiple federal defendants, "the plaintiff must plead the personal involvement of each defendant with specificity and with sufficient facts to overcome a likely defense of immunity." *Ramirez,* 998 F.Supp. at 432 (quoting *Biase v. Kaplan,* 852 F.Supp. 268 (D.N.J.1994)). "Unless the plaintiff's allegations state a claim for violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). To overcome the defense of qualified immunity, plaintiff must show (1) that there was a violation of his clearly established constitutional rights and (2) that the conduct of the immigration officers was so unreasonable and contrary to established law that they are not entitled to qualified immunity. *See generally Harlow v. Fitzgerald,* 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

1. Qualified Immunity: Clearly Established Constitutional Right

The federal defendants first argue that "plaintiff fails to state a cause of action for ... violation of any Fourth Amendment right, because he has no constitutionally guaranteed right to enter the United States or be free of detention while the Immigration officials determined whether he is entitled to land." Fed. Defs. Rep. Brf. at 17. In support of this argument, defendants cite to various immigration act provisions. The Immigration and Naturalization Act states that the Immigration Inspector "shall ... detain for further inquiry" any alien "who may not appear to the examining immigration officer at the port of arrival to be clearly and beyond a

doubt entitled to land." 8 U.S.C. § 1225(b). An alien who the immigration officer "has a reason to believe is or has been an illicit trafficker in ... controlled substance[s]" is considered automatically inadmissible. When INS officers determine that an alien may not be admissible, the alien may be "detained, paroled, or paroled for deferred inspection" until an immigration judge holds a hearing to determine whether the alien should be allowed to enter. 8 C.F.R. § 235.3(c). These statutory provisions apply to every returning alien, "including a lawful permanent resident returning from a brief vacation." *Rhoden v. United States,* 55 F.3d 428, 431 (9th Cir.1995).

Here, Ramirez is a resident alien who presented INS inspectors with his lawful permanent resident card when he sought re-entry to the United States. Admittedly, then, he is subject to the provisions cited by defendants. However, the federal defendants' contention that "plaintiff enjoyed *no* Fourth Amendment right to be free of detention until the Inspectors conclude that he is 'clearly and beyond doubt entitled to land' " is overly broad.

█ A lawful permanent resident alien returning to the country is entitled to Fourth Amendment protection from unlawful seizures. *See Rhoden,* 55 F.3d at 432; *see also Landon v. Plasencia,* 459 U.S. 21, 32–34, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982), *cited in Rhoden,* 55 F.3d at 432 ("[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly."); *cf. Kiareldeen v. Reno,* 71 F.Supp.2d 402, 409 (D.N.J.1999). This protection is tempered, but not eliminated, by the discretion granted to immigration inspectors under the statutes cited by defendants. Border searches and detentions of returning residents are not subject to the strict probable cause and warrant requirements usually required by the Fourth Amendment. *See United States v. Vega-Barvo,* 729 F.2d 1341, 1344 (11th Cir.1984). Rather, the

INS inspectors must have acted "reasonably" in deciding to detain plaintiff. *See id.* (Customs inspectors' authority to detain vacationer "is limited by the reasonableness requirement of the Fourth Amendment"); *Rhoden,* 55 F.3d at 431 (applying reasonability standard to six-day detention of returning resident alien). Therefore, although the INS had a statutory duty to screen plaintiff upon re-entry to the United States, its decision to detain plaintiff and parole him to the Hudson County Sheriff's Department must still have been "reasonable" under the Fourth Amendment. *See generally United States v. Montoya de Hernandez,* 473 U.S. 531, 542, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) (determining whether a traveler's border detention was reasonable under the Fourth Amendment).

Defendants' argument that a *Bivens* action is inappropriate because plaintiff completely lacks a constitutional right to be free of unlawful seizure and arrest fails. A *Bivens* action will lie against the INS officials if they acted "unreasonably" when they (1) detained plaintiff; (2) did not release him for five hours; and (3) paroled him to Hudson County.

### 2. Qualified Immunity: Actions of INS Inspectors

A *Bivens* action, however, cannot proceed unless plaintiff demonstrates that the conduct of the immigration officers was so unreasonable and contrary to established law that they are not entitled to qualified immunity. One of the purposes of the "qualified immunity standard is to protect public officials from the 'broad-ranging discovery'that can be 'peculiarly disruptive of effective government.'" Therefore, "qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (quoting *Harlow,* 457 U.S. at 817, 102 S.Ct. 2727). Officials are shielded from liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson,* 483 U.S. at 638, 107 S.Ct. 3034. This rule "gives ample room for mistaken judgment by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

Qualified immunity, then, will not be abridged "if the defendant acted in an objectively reasonable manner." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Capone v. Marinelli,* 868 F.2d 102, 105 (3d Cir.1989) ("Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.").

The INS defendants assert that once the Treasury Enforcement Communications System ("TECS") computer revealed an outstanding warrant which approximated plaintiff's name and description they had an objectively reasonable basis to detain plaintiff. Plaintiff counters that the description in the computer was insufficient to give a reasonable basis for detention or arrest. Plaintiff alleges that the INS officials acted unreasonably because they failed to take appropriate additional steps "to confirm that the detained individual was ... the subject of the [Hudson County] warrant."

#### a. Actions of Screening Inspectors

Upon Ramirez's arrival, he presented to the primary immigration inspector (Immigration Inspector Smith) his passport and resident alien card. They were in the name "Felix Ramon Ramirez," with a birthdate of January 24, 1958. Ramirez is 5'5' tall, weighs approximately 130 pounds and has brown eyes and hair. Inspector Smith then entered his name into the TECS computer system. The computer screen revealed the following information:

```
MKE/WANTED PERSON
ORI/NJ0090000 NAM/RAMIREZ, FELIX RAMOS SEX/M RAC/W POB/DR
DOB/012458
HGT/505 WGT/127 EYE/BRO HAI/BRO FBI/67459JA1
MNU/OA-462616B OFF/DANGEROUS DRUGS DOW/040693 OCA/42928
MIS/POSS CDS
ORI IS HUDSON CO SHERIFFS OFF JERSEY CITY NJ
NIC/W741298571
IMMED. CONFIRM WARRANT AND EXTRADITION WITH ORI
```

Based on the physical description, the matching birthdate, and the nearly identical name, he was immediately referred to the secondary inspection area at immigration.

 Computer records showing the existence of a warrant provide a reasonable basis for detention. *See Capone v. Marinelli*, 868 F.2d 102, 105–06 (3d Cir. 1989) (finding officers entitled to qualified immunity because reliance upon computer record listing outstanding warrant was reasonable); *United States v. Buckner*, 717 F.2d 297, 298–99, 301 (6th Cir.1983) (computer record sufficient to permit arrest, police need not have possession of arrest warrant). This caselaw, together with statutes directing immigration inspectors to detain all questionable aliens, leads the Court to conclude that any officer in Inspector Smith's position would have had a reasonable basis to (1) deny plaintiff entry into the United States and (2) detain him for further inspection. Plaintiff's charges against Inspector Smith and supervisors who participated in the initial decision to detain plaintiff[4] are dismissed because they are immune from suit.

#### b. Actions of Detaining Inspectors

The remaining INS defendants use the TECS printout to argue that they too acted reasonably by holding plaintiff and par-

oling him to Hudson County. They aver that even though adequate cause to hold plaintiffs already existed from the TECS computer records, they took additional steps to confirm plaintiff's identity. Defendants assert that they (1) confirmed with Hudson County that the warrant was active; (2) reviewed a photograph faxed by Hudson County which allegedly identified the subject of the warrant; (3) confirmed with plaintiff that it was a picture of him; and (4) received a set of fingerprints from Hudson County, which allegedly was compared to a set of plaintiff's prints.[5] Plaintiff responds that the INS had a duty to make a positive identification through fingerprints taken at the time of plaintiff's detention, and they failed to do so. Plaintiff also claims that the INS had an obligation to acquire plaintiff's warrant before deciding to parole him to Hudson County. Plaintiff argues that the information on the warrant would clearly have indicated that he was not the subject of the warrant.

Inspector McCormick received custody of plaintiff from Inspector Smith. The inspector called the county and confirmed that the warrant was active. She requested that Hudson County send over additional information regarding the warrant. Hudson Count faxed over a fingerprint card pertaining to a 1988 arrest of a "Felix

---

4. Because plaintiff amended his complaint to name the specific INS inspectors involved in this incident *after* this motion was filed, the Court notes that certain named ·plaintiff's roles are unclear, particularly those of supervising inspectors.

5. Plaintiff vehemently denies that he was fingerprinted by INS officials.

R. Ramirez," a photograph of the 1988 arrestee, and biographical information pertaining to this arrest. This information was obtained by the county when plaintiff had been arrested for cocaine possession in February 1988.[6] Hudson County represented to the INS that these documents related to the subject of the outstanding 1993 warrant. Upon receipt of this information, both sides agreed that the inspector asked plaintiff, in English, whether he was the person in the photograph. Plaintiff affirmatively nodded his head.[7] Both sides, however, do not agree on whether plaintiff was fingerprinted by the INS but, according to the INS, plaintiff's 1988 fingerprints sent to the INS matched the "fingerprint classification" of the suspect described in the INS computer records. Inspector McCormick concluded, based on the information sent to her by the county, that she should refuse plaintiff entry and parole him to the county. At 1:22 pm, she recorded: "subject of warrant, positive ID made through photo and fingerprints, will be picked up by Hudson County police," in the INS computer system. This entry completed the INS's identification effort. ▮ From this, the Court concludes that Inspector McCormick acted reasonably in her reliance upon the additional information sent by Hudson County to determine that plaintiff was the subject of an outstanding warrant. Probable cause to arrest may exist even if the information known to the arresting officer differs from the information provided by a suspect. *See generally Patton v. Przybylski*, 822 F.2d 697, 699–700 (7th Cir.1987) (computer showed different address and date of birth). And, as stated, an arresting officer need not have the actual warrant to detain a suspect; computer records identifying the subject of a warrant are sufficient. While Inspector McCormick could have relied solely upon the TECS records, she took additional steps to confirm that further detention was appropriate. Even if plaintiff was not fingerprinted by the INS, the photograph, the fingerprint classification, and the matching biographical information sent by the authorities who issued the warrant would allow any reasonable inspector to conclude that plaintiff should be paroled to Hudson County instead of being released. Plaintiff's claims against Inspector McCormick and those supervising officers who may have assisted her in her identification efforts, *see supra* note 4, are dismissed as they are immune from suit.

### c. Actions of Releasing Inspectors

Officer McCormick left work "just as the Hudson County Sheriff's Officers arrived to pick plaintiff up, [and] before any copy of the Hudson County Warrant was faxed from the Sheriff's Office to I.N.S." Rep. Brf. at 8. Plaintiff was not released by Officer McCormick before she left work because the INS would not release plaintiff until it received an actual copy of the Hudson County warrant. The warrant was faxed to the attention of Inspector Fitzgerald, who turned over plaintiff shortly after 5 p.m. Plaintiff says that any review of the warrant would have led a reasonable officer to conclude that plaintiff was not the man sought by the county. Plaintiff notes that (1) the warrant (and the computer records) identified the subject of the warrant as Felix Ramos Ramirez, not Felix Ramon Ramirez; and (2) the warrant stated the suspect's date of birth as April 11, 1956, not January 24, 1958. Defendants argue that once the decision to parole plaintiff was made by Inspector McCormick and her supervisors, "an arresting officer has no [further] duty to investigate or corroborate information." Rep. at 28 (citing *Baker v. McCollan*, 443

---

**6.** These charges were dropped. This is reflected in Hudson County's records.

**7.** There is some dispute over plaintiff's ability to understand English. Plaintiff, however, acknowledged in his deposition that he was shown a photograph of himself by Officer McCormick during his detention.

U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). Thus, defendants argue that neither the releasing officer, nor his supervisors, can be held liable for plaintiff's detention even if they failed to review the warrant before paroling him.

■ The Court, however, need not rule on whether the releasing officer had any further duty to determine probable cause. To resay, the evidence relied upon by the INS when it decided to detain plaintiff was sufficient to allow any reasonable inspector to conclude plaintiff was the subject of the warrant. While the actual information on the warrant differed from that given to the INS by plaintiff when initially detained, that difference is insufficient to defeat the positive identification made on the basis of the computer records supplemented with the detailed, matching physical description and photograph of the purported suspect sent by the county. *See, e.g., Patton,* 822 F.2d at 699–700; *Johnson v. Miller,* 680 F.2d 39, 40–41 (7th Cir.1982) (arrest of black female upheld despite description of "white female" in warrant); *Roa v. City of Bethlehem, Pennsylvania,* No. 89–5013, 1991 WL 52798, at * 3 (finding that a three year difference in birth dates "is not so great as to cause a reasonable police officer to question the accuracy of information received from another jurisdiction"). Plaintiff's claims against Inspector Fitzgerald and those supervising officers who released plaintiff to the Hudson Count officers are dismissed because of these individuals' immunity from suit.

## C. FTCA

As previously decided, the only proper federal defendant against whom plaintiff may pursue common law tort causes of action is the United States. *See Ramirez,* 998 F.Supp. at 434. Under the Federal Tort Claims Act, the United States can be held liable for negligence and certain intentional torts "in the same manner and to the same extent as a private individual" would be under state law. *Id.* (citing 28 U.S.C. § 2674).

### 1. False Arrest

Count IV of the complaint claims that the United States, "acting through the INS and its agents ... falsely arrested and imprisoned plaintiff by detaining him at the airport for two-and-a-half hours." Compl. ¶ 59. The United States may be held liable under the FTCA for intentional torts committed by "investigative or law enforcement officers," including false arrest. *Id.* (citing 28 U.S.C. § 2680(h)).

■ False arrest is "the constraint of the person without legal justification." *Fleming v. United Parcel Serv., Inc.,* 255 N.J.Super. 108, 604 A.2d 657 (1992), *aff'd,* 273 N.J.Super. 526, 642 A.2d 1029 (1994). There are two elements: (1) an arrest or detention against plaintiff's will (2) done without "proper legal authority" or "legal justification." *See Ramirez,* 998 F.Supp. at 434 (citing *Fleming,* 255 N.J.Super. 108, 604 A.2d 657). This Court did not rule on this count in the initial *Ramirez* decision because there was insufficient evidence to conclude that the INS inspectors acted with an objective "legal justification" for plaintiff's detention. As explained *supra,* the Court now finds that any reasonable inspector would have concluded cause existed to deny plaintiff admission to the United States and parole him to Hudson County. Plaintiff's claim for false arrest against the United States is dismissed.

### 2. Negligence

■ To prevail under a negligence theory, the plaintiff must establish these elements: (1) duty of care; (2) breach of that duty; (3) proximate cause; and (4) actual damages suffered by the plaintiff. *See Weinberg v. Dinger,* 106 N.J. 469, 484, 524 A.2d 366 (1987). The question is "whether the [INS] agents acted unreasonably in breach of their duty [to plaintiff]"—put differently, "[i]f the agents did not exercise the level of care that a reasonably prudent INS agent would have exercised under the circumstances, then a cause of action for

negligence may exist." *Ramirez*, 998 F.Supp. at 435.

■ The Court has concluded that the individual INS defendants are immune from suit because their actions were reasonable. An application of the same analysis to plaintiff's FTCA claim that the United States, through its agents, negligently detained plaintiff necessitates dismissal of this claim. *Cf. Ramirez*, 998 F.Supp. at 435 n. 7 (noting that a qualified immunity defense is also applicable to common law claims). Plaintiff's claims for negligence against the United States are dismissed.

### Conclusion

For the foregoing reasons, the United States and the individual INS defendants' motion for summary judgment to dismiss the complaint is granted.

**SO ORDERED.**

### ORDER

This matter arises on the motion of defendants, United States of America, John Thompson, Deneise Dungee, Venson Davis, Sharon Dooley, James Fitzgerald, Tracey Ann McCormick and Frederick Smith, for summary judgment to dismiss Counts I–III (*Bivens* claims against the individual defendants), IV (FTCA claim for false arrest against the United States), and XIV–XV (claims for negligence against the United States) of the complaint of plaintiff Felix Ramon Ramirez.

Upon consideration of the submissions of the parties and for the reasons stated in the accompanying opinion,

It is on this day of January, 2000,

ORDERED that defendants' motion for summary judgment to dismiss Counts I–III, IV, XIV and XV of the complaint is granted.